| | | | |
|---|---|---|---|
| AUSA: | Craig F. Wininger | Telephone: | (313) 226-9569 |
| Special Agent: | Christopher S. Pennisi, FBI | Telephone: | (313) 965-2323 |

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
    v.
Bryan Wilkins

Case No. 24-30287

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 18, 2024__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2119 | Carjacking |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Christopher S. Pennisi, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: July 24, 2024

*Judge's signature*

City and state: Detroit, MI

Hon. Kimberly G. Altman, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Christopher S. Pennisi, being duly sworn, depose and state as follows:

### I. INTRODUCTION

1. I have been employed as a Special Agent of the Federal Bureau of Investigation for nineteen years. I am currently assigned to the Violent Crime Squad in the Detroit Division of the FBI.

2. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2501(7), that is, an officer of the United States who is empowered by the law to conduct investigations of and to make arrests for the offenses enumerated in 18 U.S.C. § 2516.

3. I have investigated federal violations concerning crimes of violence and firearms. I have gained experience through training and everyday work related to these types of investigations.

4. The statements contained in this Affidavit are based on my experience and background as a special agent and on information provided by police officers, other agents of the FBI, and other law enforcement personnel. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all of facts known to law enforcement related to this investigation.

5. This affidavit is also made in support of a criminal complaint charging BRYAN WILKINS with taking a motor vehicle transported, shipped, or received in interstate commerce from the person or presence of another by force and violence or by intimidation and with intent to cause death or serious bodily harm in violation of 18 U.S.C. § 2119.

## II. PROBABLE CAUSE

6. On July 18, 2024, at approximately 5 am, 61 year old VICTIM 1 drove his 2008 Jeep Patriot to the Amoco gas station located at 10001 Fenkel Avenue in the city of Detroit to get a morning coffee prior to going to work as he has done for the last 5 years.

7. After he purchased the coffee inside the gas station market, VICTIM 1 returned to his car. He sat down in the driver's side, but as he went to close his car door, an unknown black male pulled it back open, pointed a handgun at VICTIM 1 and said "give me your keys and money [racist expletive]."

8. The incident was captured on the gas station's security cameras and the confrontation with VICTIM 1 can be clearly seen in the video, including where the gunman, later identified as BRYAN WILKINS stood in the doorway of VICTIM 1's vehicle and pointed his handgun at VICTIM 1 .



9.     VICTIM 1 exited the car to comply with the gunman's demand. However, as he did so, the gunman pointed the gun at VICTIM 1 as if trying to shoot him.



10.     VICTIM 1 then attempted to flee, but fell down, in the process dislocating his left shoulder, completely tearing the rotator cuff and shattering his left humerus to the elbow.



11. VICTIM 1 then got up and, as he began to move to the door of the gas station market, realized he had taken the keys with him when he fled from WILKINS.

12. WILKINS followed VICTIM 1 towards the market and stated "didn't I tell you to give me your keys and money?" then hit VICTIM 1 in the back fo the head with his pistol. VICTIM 1 subsequently surrendered the keys to WILKINS

and entered the market. WILKINS then entered VICTIM 1 'S Jeep Patriot and drove away from the gas station.

13. VICTIM 1 entered the gas station and asked the clerk, to call 911. An ambulance ultimately responded and transported VICTIM 1 to the hospital.

14. VICTIM 1 remained in the hospital for three days where he had emergency surgery to repair his left arm. The injuries he received during the carjacking were so extensive that he will not regain full use of his arm for approximately six months.

15. After being released from the hospital, VICTIM 1 was interviewed wherein he described the gunman who carjacked him as a black male of slim build, approximately 5' 8" tall and weighing between 160-170 lbs. VICTIM 1 believed that the gunman had been armed with a Glock pistol at the time of the carjacking. At the time of the interview, VICTIM 1 had not seen the gunman in person since the carjacking, nor was he shown any pictures of WILKINS.

16. On July 21, 2024 Police Officers assigned to the Detroit Police Department's Commercial Auto Theft Section observed VICTIM 1's Jeep parked near the intersection of Pierson Street and Eaton Avenue. They placed the vehicle under surveillance and eventually a male exited it, walking south of Pierson Street from Eaton.

17. The officers approached the male, identified themselves and gave him commands to stop moving. Instead, the male fled on foot westbound through a field towards Burt Road. The officers pursued the male until he fell down, allowing the officers to catch up to him. The male eventually got up and began running again but eventually stopped and was taken into custody. That male was later identified as BRYAN WILKINS.

18. A canine unit from Michigan State Police tracked along WILKINS' path of flight to search for anything WILKINS might have discarded while running. During the search, the canine officer located a set of keys and a cellular phone along the path WILKINS took when he ran away from the officers. Both were collected and retained as evidence.

19. An officer approached VICTIM 1's car with the keys recovered by the canine and discovered that they operated VICTIM 1's car.

20. At the time of his arrest, BRYAN WILKINS, being a black male, 5' 6" in height of slim build, weighing approximately 165 pounds, almost a complete match for the description provided by VICTIM 1.

21. A search warrant was obtained for the black cellular phone recovered by the canine officer and the following texts (in blue) were found in it:



22. In your affiant's training and experience, the text which states "Bro pull up on me I got the truck at this house I told you I wasn't playing I went to grab that b**** I got the truck at this house right now call me ASAP", taken in context with the text stating "Bro I'm on one tonight got mask and Glock and work wotch [sic] this tonight" is WILKINS telling an associate that he robbed someone for a truck using a Glock pistol. This is particularly notable because the text refencing

the truck was sent on Thursday, July 18, 2024, at 5:32 AM, approximately 30 minutes after the carjacking of VICTIM 1.

23. On November 19, 2007, WILKINS pled guilty to felony carrying a concealed weapon and was sentenced to one year in prison. On March 17, 2010, WILKINS pled guilty to two counts of felony delivering or manufacturing cocaine, heroin or other controlled substance and was sentenced to one year in prison. That same day he also pled guilty to felony armed robbery and felony carjacking for which he was sentenced to nine to twenty five years in prison. On December 8, 2009, WILKINS pled guilty to felony prisoner possessing contraband and was sentenced to three years probation.

24. On September 22, 2021, WILKINS was convicted of felony resisting a police officer and felony possession/use of body armor by a violent felon for which he was sentenced to three years of probation.

25. On July 21, 2024, at the time WILKINS was arrested for the carjacking of VICTIM 1, he was being supervised as a probationer with the Michigan Department of Correction.

26. VICTIM 1's Jeep Patriot had Vehicle Identification Number 1J8FF28W98D759529 assigned to it. The eleventh character, "D" is the manufacturing plant code. In the case of Chrysler products like VICTIM 1's Jeep, plant code "D" indicates that the vehicle was manufactured in the state of Illinois.

### III. CONCLUSION

27. On July 18, 2024, WILKINS took a motor vehicle from victim VICTIM 1 at gunpoint, and through the use of force, violence, and intimidation.

28. The Jeep Patriot that WILKINS took at gunpoint, was manufactured outside the state of Michigan. Therefore, the vehicle was "transported in interstate commerce" as recited in 18 U.S.C. § 2119.

29. Based on the above information, probable cause exists that BRYAN WILKINS, took a motor vehicle transported, shipped, or received in interstate commerce from the person or presence of another by force and violence or by intimidation and with intent to cause death or serious bodily harm in violation of 18 U.S.C. § 2119.

30. In consideration of the foregoing, I respectfully request that this Court issue a complaint against BRYAN WILKINS for his violation of 18 U.S.C. §§ 2119.

31. Further in consideration of the foregoing, I respectfully request that this court issue an arrest warrant for BRYAN WILKINS for violation of 18 U.S.C. §§ 2119.

Respectfully submitted,

_____
CHRISTOPHER S. PENNISI
Special Agent, FBI

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
HON. KIMBERLY G. ALTMAN
UNITED STATES MAGISTRATE JUDGE

Date: July 24, 2024